IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Cv. No. 10-2301-STA-dkv |
|  | ) | Cr. No. 08-20338-STA |
| HOWARD ONRY, | ) | |
| Defendant. | ) | |

ORDER GRANTING UNITED STATES' MOTION TO DISMISS
(ECF No. 3)
ORDER DENYING & DISMISSING MOTION PURSUANT TO 28 U.S.C. § 2255
ORDER DENYING CERTIFICATE OF APPEALABILITY
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
ORDER DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

On April 22, 2010, Defendant Howard Onry, Bureau of Prisons registration number 22439-076, an inmate at the Federal Correctional Center in Yazoo City, Mississippi, filed a *pro se* motion under 28 U.S.C. § 2255. (Motion ("Mot."), ECF No. 1.) On July 8, 2010, the Court directed the United States to respond to the motion to vacate. (Order, ECF No. 2.) On July 13, 2010, the United States filed a motion to dismiss Defendant's motion to vacate. (Mot. to Dismiss, ECF No. 3.)

On October 15, 2008, Defendant Onry appeared before this judge to plead guilty to a criminal information charging him with possession of not less than fifty (50) kilograms of a mixture and substance containing a detectable amount of cocaine with the intent

to distribute, in violation of 21 U.S.C. § 841(a)(1).[1] Onry pled guilty pursuant to a written plea agreement.[2] The plea agreement provided as follows:

> The Defendant, Howard Onry, by and through his counsel, Bill Anderson, knowingly and voluntarily agrees with the United States Attorney for the Western District of Tennessee, through the undersigned Assistant U.S. Attorney, to plead guilty to count one of the information filed herewith charging the Defendant with a violation of 21 U.S.C. § 841(a)(1).
>
> 1. Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure and in consideration for the Defendant's plea of guilty, the United States will recommend that the Defendant receive a three-level reduction for acceptance of responsibility under U.S. Sentencing Guidelines § 3E1.1, provided he continue to exhibit acceptance of responsibility. The Defendant understands that if in the opinion of the United States, it is learned that the defendant has previously engaged in, or if he engages in the future, in conduct inconsistent with the acceptance of responsibility, including, but not limited to participation in any additional criminal activities between now and the time of sentence this position could change. The Defendant understands that if the Court does not accept these recommendations the Defendant nevertheless has no right to withdraw the plea.
>
> 2. Neither the United States nor any law enforcement officer can or does make any promises or representations as to what sentence will be imposed by the Court. The Defendant understands that any discussions with his attorney regarding a sentence are estimates about possible outcomes, not promises or guarantees.
>
> 3. Should it be judged by the United States that the Defendant violated any federal, state or local law, or has engaged in any conduct constituting obstructing or impeding justice within the meaning of U.S. Sentencing Guidelines § 3C1.1 or has failed to make any court appearances in this case, from the date of the

---

[1] Information, United States v. Onry, No. 08-20338-STA-1 (W.D. Tenn.), Criminal ("Cr.") ECF No. 1; Waiver of Indictment, id., Cr. ECF No. 2; Min. Entry, id., Cr. ECF No. 4.

[2] Mem. of Plea Agreement, id., Cr. ECF No. 3.

Defendant's signing of this plea agreement to the date of the Defendant's sentencing, or if the Defendant attempts to withdraw the plea, or if he engages in any conduct inconsistent with acceptance of responsibility, including, but not limited to, minimizing the scope of his criminal involvement then the United States will be released from its obligations and would become free to argue for any sentence within statutory limits.  Such a breach by the Defendant would not release the Defendant from this plea of guilty.

4.   The Defendant understands that any statement made in the course of the plea colloquy may be used against the Defendant in any criminal prosecution.  The Defendant knowingly, intelligently and voluntarily waives any objection based on Fed. R. Evid. 410.

5.   The Defendant further understands and agrees the special assessment is due and payable to the U.S. District Clerk's Office immediately following the Defendant's sentencing.

6.   Based on the Defendant's assistance to the United States, it is contemplated that the United States may recommend to the Court a downward departure pursuant to U.S. Sentencing Guidelines § 5K1.1 and 18 U.S.C. § 3553(e).  This would be solely within the discretion of the United States and is not part of the plea agreement. The Defendant understands that if the Defendant falsely implicates an innocent person in the commission of a crime, or exaggerates the involvement of any person in the commission of a crime in order to appear cooperative, or if the Defendant falsely minimizes the involvement of any person in the commission of a crime in order to protect that person then the United States will not recommend a downward departure and the Defendant will be in violation of the plea agreement.

7.   The Defendant knowingly, intelligently and voluntarily waives any rights to an appeal of his conviction or sentence in this case.

8.   This writing constitutes the entire Plea Agreement between the Defendant and the United States with respect to the plea of guilty.  No additional promises representations or inducements other than those referenced in the Plea Agreement have been made to the Defendant or to the Defendant's attorney with regard to

this Plea, and none will be made or entered into unless in writing and signed by all parties.[3]

The Court conducted a sentencing hearing on October 29, 2009, at which Onry was sentenced to a term of imprisonment of two hundred forty (240) months, to be followed by a five-year period of supervised release.[4] Judgment was entered on November 3, 2009.[5] Defendant did not file a notice of appeal.

On April 22, 2010, Onry filed this § 2255 motion alleging that counsel provided ineffective assistance by "fail[ing] to file a notice of appeal when told to do so by Movant." (Mot., ECF No. 1 at 4.) The United States contended that Defendant's motion should be summarily dismissed because he waived his right to appeal either his conviction or sentence as a part of his plea agreement. (Mot. to Dismiss, ECF No. 3 at 2.) The United States relied on Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999), stating that no hearing is required when the petitioner's allegations cannot be accepted as true because they are contradicted by the record,

---

[3]  Mem. of Plea Agreement, id., Cr. ECF No. 3.

[4]  Min. Entry, id., Cr. ECF No. 36; Sentencing Hearing ("Hr'g") Transcript ("Tr."), id., Cr. ECF No. 39-1.

   The statutory sentencing range was not less than ten years, not more than life. Onry's offense level was 34 for not less than 50 grams of cocaine base. Onry received a two-level reduction pursuant to the crack cocaine amendment that went into effect in 2008 and also a two-level enhancement because a firearm was possessed in conjunction with the drugs, resulting in an adjusted offense level of 34. Onry received full credit for acceptance of responsibility and the United States recommended a sentence a the low end of the applicable guidelines range despite Onry's subsequent arrest for possession of a small amount of crack cocaine when he was inadvertently released on bond during the pendency of the case. After the application of Chapter 4 enhancements, Onry's total offense level remained 34. Given his criminal history category of VI, the guidelines sentencing range was 262-327 months. The Court imposed a sentence slightly below the guidelines.

[5]  Judgment ("J."), United States v. Onry, No. 08-20338-STA-01, Cr. ECF No. 37.

4

inherently incredible, or conclusions rather than statements of fact. (Mot. to Dismiss, ECF No. 3 at 1.)

Defendant Onry's motion to vacate and affidavit in support were signed under penalty of perjury. (Mot., ECF No. 1 at 13, Memorandum ("Mem."), ECF No. 1-1 at 10-11.)  Onry stated that he requested his attorney to file an appeal both before and after sentencing.  (Mem., ECF No. 1-1 at 2.)  Onry alleged that after he reached his designated prison, he discovered that no notice of appeal was on his criminal docket sheet.  (Mem., ECF No. 1-1 at 3.)

In Campbell v. United States, 686 F.3d 353, 360 (6th Cir. 2012), the United States Court of Appeals for the Sixth Circuit held that "even when a defendant waives all or most of his right to appeal, an attorney who fails to file an appeal that a criminal defendant explicitly requests has, as a matter of law, provided ineffective assistance of counsel that entitles the defendant to relief in the form of a delayed appeal."  Defendant's allegations could not be disproven by the records of the case.  Although this Court accepted the plea and conducted the sentencing hearing and may rely on its own recollection, it was not privy to any discussions about Defendant Onry's desire to appeal before and after sentencing.  The Court determined that an evidentiary hearing was necessary to resolve this matter and counsel was appointed for Defendant.  (Orders, ECF No. 5, ECF No. 10.)

On August 23 and 27, 2013, evidentiary hearings were held. (Mins., ECF Nos. 19-20.)  Defendant was represented at the hearings by Attorney Ross Sampson.  Defendant's proof consisted of the

5

testimony of Defendant. (Mins., ECF No. 19.) The United States presented the testimony of Defendant's trial counsel, William C. Anderson, Jr.[6] (Mins., ECF No. 20.)

During the evidentiary hearing, Defendant attempted to raise additional issues. At the time Onry did not take a direct appeal, "an unappealed district court judgment of conviction [became] 'final' ten days after the entry of judgment, at least where the defendant has not actually sought an extension of appeal time for good cause or excusable neglect." Sanchez-Castellano v. United States, 358 F.3d 424 (6th Cir. 2004); see also United States v. Cottage, 307 F.3d 494, 499 (6th Cir. 2002) ("when a § 2255 movant does not pursue a direct appeal to the court of appeals, his conviction becomes final either on the date that the judgment was entered . . . or on the date on which the time for filing such appeal expired"; describing the latter as the "majority view"); Chandler v. United States, 22 F. App'x 399, 400 (6th Cir. 2001). Because no direct appeal was taken, Onry's conviction became final on November 13, 2009. The running of the § 2255 statute of limitations commenced on that date, and it expired one year later, on November 15, 2010.[7]

The mandate of Fed. R. Civ. P. 15(a), that a court freely grant leave to amend when justice so requires, has been interpreted to allow supplementation and clarification of claims initially

---

[6] Anderson is now a Shelby County General Sessions Criminal Court Judge.

[7] Under Fed. R. App. P. 26(a)(3), time periods do not include a last day that falls on a Saturday, Sunday, or legal holiday. November 13, 2010, fell on a Saturday. Therefore, the deadline was extended until Monday, November 15, 2010.

6

raised in a timely § 2255 motion.  *See* Anderson v. United States, No. 01-2476, 2002 WL 857742 at *3 (6th Cir. May 3, 2002); Oleson v. United States, 27 Fed. App'x 566 (6th Cir. Dec. 14, 2001). However, the time to amend to raise additional claims expired on November 15, 2010.  Once the statute of limitations has expired, allowing amendment of a petition to allege additional grounds for relief would defeat the purpose of the AEDPA.  Oleson, 27 Fed. App'x at 571 (citing United States v. Thomas, 221 F.3d 430, 436 (3d Cir. 2000)("[A] party cannot amend a § 2255 petition to add a completely new claim after the statute of limitations has expired.")).[8]  The attempt to assert additional claims is untimely. Those claims are barred by the statute of limitations and will not be further addressed.

At the evidentiary hearing, Defendant Onry testified that, after he was sentenced, "the judge asked were we going to file an appeal.  Mr. Anderson said no, and I said – while we were sitting over there, I told him" in a private conversation to file an appeal. (Tr. of Proceedings, ECF No. 22 at 53.)  Onry testified that when Anderson told him that he was not going to file an appeal, "[m]y reaction was, why not? But I didn't say it in so many words, but I wanted to, but it just was at that time I was wondering why not."  (Tr. of Proceedings, ECF No. 22 at 11.)

---

[8]    *See also* United States v. Pittman, 209 F.3d 314, 317-18 (4th Cir. 2000)("The fact that amended claims arise from the same trial and sentencing proceeding as the original motion does not mean that the amended claims relate back for purposes of Rule 15(c). . . . Such a broad view of 'relation back' would undermine the limitations period set by Congress in the AEDPA" (citing United States v. Duffus, 174 F.3d 333, 337 (3d Cir. 1999)).

Defendant stated that when [Anderson] told me that he wasn't going to file one, that's when I realized that I had to do something on my own" and "I filed ineffective assistance of counsel." (Tr. of Proceedings, ECF No. 22 at 13.) Defendant testified that he did not have anyone file an appeal for him, did not request an expedited appeal, and did not have further discussions with Anderson. (Tr. of Proceedings, ECF No. 22 at 13.)  Onry stated that he believed it was ineffective assistance when Anderson said that he wasn't going to file an appeal because "him being my attorney . . . he should . . . have filed one on my behalf, me asking since he is my attorney." (Tr. of Proceedings, ECF No. 22 at 14.)

In response to questioning by the Court, Defendant testified that when Anderson told the Court he was not going to file an appeal for Defendant Onry, Defendant said, "Mr. Anderson, will you file an appeal for me? Then he told me, 'No.'" Onry stated that he said "I would like to file an appeal. Have you filed an appeal for me?" and Anderson replied, "no, that I couldn't file an appeal" and "[t]hat's when I filed the 2255 motion for ineffective counsel." (Tr. of Proceedings, ECF No. 22 at 22-23.)  Defendant testified that Anderson tried to shake his hand at the end of the proceedings and Defendant refused because he "was upset." (Tr. of Proceedings, ECF No. 22 at 23.)

During cross-examination, Onry admitted that he did not hire Anderson, who was retained counsel, to file an appeal. (Tr. of Proceedings, ECF No. 22 at 39.)  Onry testified that he did not understand his plea agreement, that Anderson did not explain the

8

plea agreement in detail, and that Anderson did not go over the presentence report with him. (Tr. of Proceedings, ECF No. 22 at 40-43.) Defendant admitted that he never told the Court that he wanted to appeal. (Tr. of Proceedings, ECF No. 22 at 44.)

Judge Anderson testified that he was a criminal defense attorney for twenty-eight years practicing in state and federal courts. (Tr. of Proceedings, ECF No. 22-1 at 6.) Anderson recalled that his representation of Defendant Onry began in state court where Onry was initially charged and continued when the federal government picked up the prosecution. (Tr. of Proceedings, ECF No. 22-1 at 7.) Anderson testified that he was contacted and retained by a member of Onry's family to represent Onry at trial and was not retained to file an appeal. (Tr. of Proceedings, ECF No. 22-1 at 8.)

Anderson explained that his usual practice with a defendant who was offered a plea was to "read it, have them read it, explain every provision of it, ask if they understand; if they don't, try to clarify anything that they don't understand, and then have them sign it and I sign it. (Tr. of Proceedings, ECF No. 22-1 at 8.) Anderson testified that Onry's plea agreement contained a waiver of appeal and he explained it to Onry. (Tr. of Proceedings, ECF No. 22-1 at 8-9.) Anderson stated that Onry had a considerable criminal history and was classified as a career offender, yet by pleading guilty, Onry received a sentence that was below the minimum guidelines range and significantly below the top end of the range. (Tr. of Proceedings, ECF No. 22-1 at 9.)

Anderson was provided with a copy of Defendant's sentencing transcript to refresh his recollection about his conversation with the Court about filing an appeal. (Tr. of Proceedings, ECF No. 22-1 at 9-10.) That portion of the transcript states:

>    The Court:      What about appeal in this matter?
>    Mr. Anderson:   That was waived by the plea agreement, Judge.

(Tr. of Sentencing, United States v. Onry, No. 08-20338-STA-1 (W.D. Tenn.), Cr. ECF No. 39-1 at 26.) Anderson did not recall Onry afterwards telling Anderson to appeal and testified that even if Onry did, "I would have told him that he had already waived that appeal in his plea agreement. But I do not recall him asking me that." (Tr. of Proceedings, ECF No. 22-1 at 10-11.) Anderson's file contained no letters indicating that Defendant contacted him and asked him to file an appeal. (Tr. of Proceedings, ECF No. 22-1 at 11.)

On cross-examination, Anderson testified that it took a lot of time and effort to explain things "to a point where I felt like [Onry] undertood it." (Tr. of Proceedings, ECF No. 22-1 at 18.) Anderson stated that communication with Onry was no more challenging than most, but

> was challenging because it was difficult to make Mr. Onry understand that he was looking at a tremendous amount of prison time based on his record and the federal guidelines, and he had a hard time wrapping his head around that, that, you know, because of this amount of dope in a house that he is caught with and he's looking at being a career offender and looking at up to life in prison and having a pistol in the house that he claimed to be his. He didn't understand why - he had been in the dope business a long time, he had many convictions for

>
> the dope business, it had been minor prison times, and now all of a sudden he's looking at the possibility of life as a career offender. He had a real hard time understanding that. He had a real hard time understanding initially how the state court charged him and it could end up in federal court. He felt that was a problem. But, yes, he had - it was challenging in that aspect. It wasn't challenging making him understand, for instance-

(Tr. of Proceedings, ECF No. 22-1 at 18-19.) Anderson testified that Onry received a sentence that was twenty-two months below the bottom end of the applicable guidelines range. (Tr. of Proceedings, ECF No. 22-1 at 19.)

The United States requested that the transcripts of Defendant's change of plea and sentencing hearings be made exhibits in this action. In particular, the United States directed the Court's attention to the following colloquies from the change of plea:

> The Court:  Have you had an opportunity to discuss the charges against you with your attorney?
>
> Defendant:  Yes, I did.
>
> The Court:  Has he explained them to your satisfaction? You feel like he's explained everything to you appropriately?
>
> Defendant:  Yes, Your Honor.
>
> The Court:  Are you satisfied with his representation?
>
> Defendant:  I am.
>
>                   . . .
>
> The Court:  And you also will be giving up your right to appeal any conviction in this matter, do you understand that?

11

|  |  |
|---|---|
| Defendant: | Yes, sir. |

. . .

|  |  |
|---|---|
| The Court: | Just pass it to Mr. Onry. Mr. Onry, that's a document that's titled Plea Agreement. And on the second page I believe it is, or maybe it is the third page, it appears to have your signature. Did you sign that document? |
| Defendant: | Yes, I did, Your Honor. |
| The Court: | Did you have a chance to discuss it with Mr. Anderson before you signed it? |
| Defendant: | Yes, I did. |
| The Court: | Did he explain to you what the contents of the agreement were? |
| Defendant: | Yes, he did, Your Honor. |
| The Court: | Did you understand his explanation of what was contained in the agreement? |
| Defendant: | I do. |

(Tr. of Change of Plea, United States v. Onry, No. 08-20338-STA-1 (W.D. Tenn.), Cr. ECF No. 39 at 4, 7, 9-10.)

An attorney who represents a federal criminal defendant and who fails to file a timely notice of appeal after a request by his client is ineffective, in violation of the client's Sixth Amendment rights, without regard to the analysis of prejudice normally conducted under Strickland v. Washington, 466 U.S. 668, 687 (1984). *See, e.g.* Roe v. Flores-Ortega, 528 U.S. 470, 483, 120 S. Ct. 1029, 1038-39, 145 L. Ed. 2d 985 (2000)(holding that appeal in which defendant is completely denied counsel in violation of the Sixth Amendment is presumptively unreliable because no presumption of reliability can be accorded to proceedings that "never took place"

and prescribing that remedy is delayed appeal); Ludwig v. United States, 162 F.3d 456, 459 (6th Cir. 1998)(holding that "failure to perfect an appeal, in derogation of a defendant's actual request, is a per se violation of the Sixth Amendment").

Defendant Onry was displeased with the sentence the Court imposed. However, Onry's selective memory of testimony during the plea and sentencing proceedings does not comport with the written transcripts. Onry received a significant benefit from his guilty plea. Anderson's testimony that he did not recall Onry directing him to take an appeal and, if Onry had made the request, that he would have told Onry that the appeal was waived is credible and consistent with the record before the Court. Furthermore, Onry's hearing testimony demonstrates that he knew he had waived his right to appeal, he knew that Anderson was not going to file an appeal, and he knew he did not retain Anderson to file an appeal. Onry took no action to perfect his appeal on his own and waited over five months before filing this motion to vacate. Because Onry did not direct Anderson to pursue an appeal, Anderson clearly was not deficient in failing to file a notice of appeal. The United States' motion to dismiss is GRANTED and Defendant's motion is DENIED. The Clerk shall enter judgment for the United States.

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R.

App. P. 22(b). No § 2255 movant may appeal without this certificate.

In <u>Slack v. McDaniel</u>, 529 U.S. 473, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Slack</u>, 529 U.S. at 484, 120 S. Ct. at 1603-04 (quoting <u>Barefoot</u>, 463 U.S. at 893 & n.4, 103 S. Ct. 3383).

The Supreme Court has cautioned against undue limitations on the issuance of COAs:

> [O]ur opinion in <u>Slack</u> held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in <u>Slack</u> would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "has already failed in that endeavor."

<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 337, 123 S. Ct. 1029, 1039, 154 L. Ed. 2d 931 (2003) (quoting <u>Barefoot</u>, 463 U.S. at 893 n.4, 103 S. Ct. 3383). Thus,

> [a] prisoner seeking a COA must prove "something more than the absence of frivolity" or the existence of mere "good faith" on his or her part. We do not require

>petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

*Id.* at 338, 123 S. Ct. at 1040 (quoting Barefoot, 463 U.S. at 893, 103 S. Ct. 3383); *see also id.* at 342, 123 S. Ct. at 1042 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA; "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[9]

In this case, for the reasons previously stated, the Defendant cannot present a question of some substance about which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Fed. R. App. P. 24(a). Kincade, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting

---

[9] The Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." Miller-El, 537 U.S. at 337, 123 S. Ct. at 1039. Instead, the COA requirement implements a system of "differential treatment for those appeals deserving of attention from those that plainly do not." Id., 123 S. Ct. at 1040.

15

affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is DENIED. If Defendant files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED this 20th day of September, 2013.

**s/S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE